```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SHCRAY HILL, | HONORABLE JEROME B. SIMANDLE |
| Petitioner, | |
| | CIVIL NO. 07-2732 (JBS) |
| v. | |
| | [CRIMINAL NO. 03-685 (JBS)] |
| UNITED STATES OF AMERICA, | |
| Respondent. | **OPINION** |

**SIMANDLE**, District Judge:

Petitioner Shcray Hill brings this pro se civil action for habeas corpus relief pursuant to 28 U.S.C. § 2255. Petitioner is a federal prisoner currently serving a sentence of 120 months for violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count One), and 60 months for violation of 18 U.S.C. § 924(c) (Count Two), consecutively, for a total of 180 months. Petitioner challenges his conviction and sentence only on Count One, on the grounds that he received ineffective assistance of counsel. He requests that the court vacate, set aside, or correct this sentence pursuant to 28 U.S.C. § 2255. For the reasons explained below, the Court will deny this petition for habeas corpus relief.

**I.   BACKGROUND**

Originally, on September 26, 2003, this Court sentenced Petitioner to a 190-month sentence, based upon his plea of guilty

to possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  See United States v. Hill, Criminal Action No. 03-685 (JBS), dkt. Item 26 at 1.

While Petitioner's Presentence Investigation Report ("PSR") called for a Sentencing Guideline range of 262 to 327 months' imprisonment, Petitioner argued, and the Court agreed, that classifying Petitioner as a Career Offender overstated his criminal history.  (Tr. at 9.)  Therefore, the Court granted Petitioner's motion for a downward departure under U.S.S.G. § 4A1.3(b), reducing Petitioner's Offense Level of 31, and Criminal History Category VI, down to an Offense Level 27, Criminal History Category V.  (Id.)  The departure resulted in a Guidelines range of 120 to 150 months on Count One.  (Id.)  This Court decided, in light of the seriousness of the offense, Petitioner's uncertain commitment to rehabilitation, and the need to protect the community, to sentence Petitioner to 130 months on Count One, followed by a mandatory, consecutive 60-month sentence on Count Two.  (Tr. at 9-10.)

Thereafter, Petitioner appealed to the Third Circuit.  While the appeal was pending, the Supreme Court decided United States v. Booker, 543 U.S. 220 (2005), determining that the U.S. Sentencing Guidelines must be applied in a non-binding fashion in

order to avoid unconstitutionality.  The Court of Appeals vacated the sentence and remanded the matter to this Court for resentencing in light of the principles that had subsequently been announced.  Hill, 206 Fed. Appx. at 222.

Accordingly, this Court held a resentencing hearing on April 14, 2005.  (Tr. at 1.)  Throughout the hearing, counsel for Petitioner, Brian J. McMonagle, Esq., reiterated the discretionary nature of the Sentencing Guidelines.  (R. at 3, 5, 8-9.)  Mr. McMonagle argued that, "[w]ith the Guidelines obviously being rendered as a guide, and this Court having discretion", (Tr. at 3), the Court had the power to render a sentence outside the Guideline range, if deemed appropriate.  Mr. McMonagle later stated, "your Honor today has the opportunity . . . to fashion a sentence that would allow [Petitioner] to spend ten years in jail," again indicating the discretionary nature of the Sentencing Guidelines, and the ability of the this Court to make a sentencing decision outside of the advisory Guideline range.  (Tr. at 5.)

The Court likewise acknowledged the discretionary nature of the Guidelines throughout the sentencing hearing.  The Court explained that its decision to grant a downward departure of one level "came from a Guideline that, of course, is still good law, but now it's non-binding . . ."  (Tr. at 10.)  The Court further demonstrated its recognition of the advisory nature of the

Guidelines when it commented on its initial sentencing decision from September 2003, stating, "I didn't give him 120 months, I didn't feel that constrained by the Guidelines, I gave him 130 [months]."  (Tr. at 9.)

After hearing the arguments of counsel as to the appropriate sentence to be imposed, the Court stated:

> It's my obligation to take all of the circumstances and all of the facts of this case into account and to impose a sentence that is reasonable.  The factors that have to be taken into account are all of those enumerated by Congress in Section 3553(a) of the criminal code.  Those factors include the Sentencing Guidelines themselves that have been enacted for use in Federal Court.

(Tr. at 32.)  Before proceeding to the § 3553(a) provisions, the Court explained that it would "start with the Sentencing Guidelines, <u>recognizing that they are advisory</u> but believing in this case, as in most, they provide guidance for what the overall sentence should be."  (Tr. at 33.) (emphasis added).

In determining the proper Guideline range, this Court again found that there was "an overstatement in elevating the offender to career offender status," thereby reducing the Total Offense Level to 27 and Criminal History to Category V, and resulting in a Sentencing Guideline range of 120 to 150 months on Count One. (Tr. at 33.)

Following the determination of the proper Guidelines range, the Court discussed, in detail, the provisions of § 3553(a) as they applied to Petitioner.  These considerations included the

4

nature and circumstances of the offense, (which included possession of seven firearms and sale of $50,000 in cocaine), the characteristics of Petitioner, the need for the sentence to reflect the seriousness of the offense, the need to protect the public from further crimes committed by Petitioner, the need for rehabilitation, and the need to avoid unwarranted disparities among defendants with similar records.  (Tr. at 34-37.)  The Court further noted positive steps Hill was taking toward rehabilitation during his time in prison since the first sentencing.  (Tr. 34-35.)  After weighing the § 3553(a) factors, the Court found that they supported a slightly reduced sentence, but that "the need to punish, the need to deter, the need to protect society are still extremely important.  And the total sentence then of 180 months I find to be the appropriate sentence."  (Tr. at 37.)

Petitioner appealed the reduced sentence decision to the Court of Appeals.  Hill, Fed. Appx. at 223.  On November 20, 2006 the Court of Appeals issued a decision affirming the judgment of this Court, finding that Mr. Hill's appeal was frivolous.  Hill, 206 Fed. Appx. at 222.  The Court stated in its opinion:

> At [petitioner's] original sentencing hearing he was the beneficiary of a downward departure adjustment that reduced both his Total Offense Level and his Criminal History Category.  At resentencing, the District Court fully considered each of the factors enumerated in 18 U.S.C. § 3553(a) and meticulously explained why those factors could not justify an even more lenient sentence than the one imposed.

5

Id. at 224.

Petitioner has now filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct the sentence imposed by this Court, on the ground that he received ineffective assistance of counsel. Petitioner argues that his counsel was ineffective due to his failure to object to this Court's use of the Sentencing Guidelines as if they were mandatory, contrary to the holding in Booker.

**II. DISCUSSION**

Title 28 U.S.C. § 2255 provides that a prisoner in custody may move the court to vacate, set aside, or correct a sentence if that sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack.  See 28 U.S.C. § 2255.  Ineffective assistance of counsel falls into the last category, as a petitioner has a right to raise the issue as a collateral attack.  United States v. Thorton, 327 F.3d 268, 271 (3d Cir. 2003) (noting that issues of ineffective assistance of counsel are to be raised as a collateral attack).

The burden of proving a claim of ineffective assistance of counsel rests upon the petitioner.  Government of Virgin Islands

v. Nicholas, 759 F.2d 1073, 1081 (3d Cir. 1985).  According to Strickland v. Washington, 466 U.S. 668 (1984), to succeed on an ineffective assistance of counsel claim, a defendant must satisfy a two-part test.  The first part requires a defendant to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  In order to meet this burden, the Petitioner must show that the attorney's representation failed to meet an objective standard of reasonableness, and the scrutiny of the counsel's performance is highly deferential.  Id. at 688-689.  Furthermore, the attorney's conduct must be judged on the facts of the particular case, at the time it took place.  Id. at 690.

The second prong of the Strickland test requires the petitioner to show that he or she was actually prejudiced by counsel's deficient performance, which requires establishing a "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  The Third Circuit has interpreted Strickland as requiring the courts to decide first whether the allegedly deficient conduct has prejudiced the defendant.  United States v. Fulford, 825 F.2d 3, 8 (3d Cir. 1987) (citing McNeil v. Cuyler, 782 F.2d 443, 449 (3d Cir.), cert. denied, 479 U.S. 1010 (1986)).

In order to ascertain whether Petitioner can sustain a valid

claim of ineffective assistance of counsel, this Court must determine, (1) whether the Court treated the Guidelines as mandatory, and if so, (2) whether Petitioner's counsel made unprofessional errors that prejudiced Petitioner, by failing to object to the Court's use of the Guidelines as mandatory; (3) and whether that failure to object was so serious that counsel was not functioning as the "counsel" guaranteed to Petitioner in the Sixth Amendment.

As the Court explains below, because this Court did not treat the Sentencing Guidelines as mandatory, Petitioner's counsel made no error that rendered his assistance ineffective. Petitioner was not prejudiced by his attorney's actions and Petitioner's counsel was acting as the "counsel" guaranteed by the Sixth Amendment.  Therefore, Petitioner's § 2255 motion must fail.

**A.  The Court's Treatment of the Sentencing Guidelines**

The Supreme Court has stated that "the [Sentencing] Guidelines are not only not mandatory on sentencing courts; they are also not presumed reasonable." Nelson v. United States, --- U.S. ----,  129 S. Ct. 890, 892 (2009). See Rita v. United States, 551 U.S. 338, 351 (2007).  In addition to the Sentencing Guidelines, the sentencing court must "consider all of the 3553(a) factors to determine whether they support the sentence requested by a party." Id.  In undertaking this analysis, "[t]he

8

court is not required to address the specific weight it gave to each factor; instead, it need only 'articulate enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." Id. (quoting Rita, 551 U.S. at 367.)

While the Sentencing Guidelines are neither mandatory nor presumed reasonable, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" which serves as "the starting point and the initial benchmark" for the proceeding analysis. Gall v. United States, --- U.S. ----, 128 S. Ct. 596, 598 (2007).

This Court began its analysis with the Sentencing Guidelines, "recognizing [that] they're advisory but believing in this case, as in most, they provide guidance for what the overall sentence should be." (Tr. 33-34.) This statement, which is one of two statements that Petitioner alleges is evidence of the Court's treatment of the Guidelines as mandatory, is not contrary to the post-Booker principle requiring the court to treat the Guidelines as advisory.[1] Other courts have acknowledged that the

---

[1] As the Court of Appeals has explained:

Our post-*Booker* precedent instructs district courts to follow a three-step sentencing process:

> (1) Courts must continue to calculate a defendant's Guidelines Sentence precisely as they would have before *Booker*;

"Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Rita, 551 U.S., at 350.  Likewise, in the statement cited by Petitioner, this Court neither expressly nor implicitly indicated that it perceived the Sentencing Guidelines as mandatory, but rather acknowledged the important advisory role that the Guidelines are supposed to, and do in fact, serve in sentencing decisions.

The second statement that Petitioner takes issue with likewise does not suggest that the Court treated the Guidelines as mandatory.  The Court stated that "[t]he sentence [] I impose needs to reflect the seriousness of the offense, and certainly much of that is wrapped into the Guidelines determination to promote respect for the law."  (Tr. at 35.)

The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands

---

> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force; and
>
> (3) Finally, they are required to 'exercise[] [their] discretion by considering relevant [§ 3553(a)] factors,' U.S. v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006), in setting the sentence they impose regardless of whether it varies from the sentence calculated under the Guidelines.

United States v. Tomko 498 F.3d 147, 163 n.6 (3d Cir. 2007).

of individual sentencing decisions." Gall, 128 S. Ct. at 594. They were written in order to "carry out [the] § 3553(a) objectives", (Rita, 551 U.S., at 348), and they "reflect the fact that the Sentencing Commission . . . worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill this statutory mandate." Rita, 551 U.S., at 349.  One of the objectives considered by the Commission was that which was mentioned by the Court here; namely "to promote respect for the law". § 3553(a)(2)(A).  The Court's statement referenced above, therefore, was an acknowledgment of one of one the ultimate purposes behind the Sentencing Guidelines, and not an indication that the Court regarded the Guidelines as if they were mandatory.

On the contrary, the comments of this Court, throughout the hearing, reflected its recognition that Guidelines were advisory. While looking to the Guidelines for an informed recommendation, the court made it clear that it was aware of the non-binding nature of the Guidelines, as well as the Court's own ability to use its discretion in the ultimate sentence determination.  After calculating Petitioner's initial adjusted sentencing range, 120 to 150 months on Count One, the Court explained, "I didn't give him 120 months, I didn't feel that constrained by the Guidelines, I gave him 130 [months].  And I did that because it wasn't my intention to be as lenient as possible in light of the

11

seriousness of the offense."  (Tr. at 9.)

The Court spoke about the effect of Booker, which gave the Court "the discretion now, that I didn't have [pre-Booker], to re-examine [the Criminal History Category] and not be constrained by the Level Five" Criminal History Category that the Guidelines dictated.  (Tr. at 10.)  The Court recognized it could grant a departure in Petitioner's Criminal History Category according to 4A1.3(b)(3)(A), "a Guideline that, of course, is still good law, but now [is] non-binding."  Id. (emphasis added).

The Court explicitly acknowledged that "[t]he factors that have to be taken into account are all of those that are enumerated by Congress in Section 3553(a) of the criminal code," not just the Sentencing Guidelines.  (Tr. at 32.)  While "[t]hose factors include the Sentencing Guidelines themselves," the Court's analysis was not limited to the that single variable.  (Id.)  The Court specified that

> the imposition of [a] sentence also has to take into account the nature and circumstances of the offense, the history and the characteristics of the defendant,[] the need for the sentence imposed to reflect the seriousness of the offense to promote respect for the law and to provide just punishment for the offense, [] the need for the sentence to impose adequate deterrence for criminal conduct, [to] protect the public from further crimes of the defendant and [] provide the defendant with needed educational or vocational training or correctional treatment in the most effective manner . . . also the need to avoid unwarranted sentence departures among defendants with similar records who have been found guilty of similar conduct . . . [and] the need to provide restitution to any victims of the offense.

(Tr. at 32-33.)  As the Court of Appeals stated, "the District Court fully considered each of the factors enumerated in 18 U.S.C. § 3553(a) and meticulously explained why those factors could not justify an even more lenient sentence than the one imposed."  Hill, 206 Fed. Appx. at 223.  The Court devoted a significant amount of time during the hearing to explain why, after careful consideration, each one of the § 3553(a) factors, in addition to the Sentencing Guidelines recommendation, supported the 180-month sentence.  (Tr. at 9-11, 32-37.)

Lastly, the Court made a definitive statement about how it viewed both the Court's and the Guidelines's roles in sentencing. The Court stated, "It is my job to do the best I can to treat similar cases similarly, either no more harshly or leniently, but still do justice in the instant case, and that's what I try to do, Guidelines or no Guidelines."  (Tr. at 37.)  Again, while this Court perceived the Guidelines as serving an important advisory function, it thoroughly considered all of the § 3553(a) factors in its ultimate determination that the 180-month sentence was appropriate.

After reviewing the transcript from the sentencing hearing, it is clear that the Guidelines were not treated as mandatory by this Court in its final determination of Petitioner's sentence. While the Sentencing Guidelines constituted one of the factors considered by the Court, they were treated in an advisory

13

capacity only, and did not carry more or less weight than the other provisions of § 3553(a).  After careful consideration of all the above factors, the Court properly concluded that with or without the Guidelines, "the need to punish, the need to deter, the need to protect society are still extremely important.  And the total sentence then of 180 months. . . [is] the appropriate sentence."  (Tr. at 37.)

**B.   Whether Counsel's Performance Prejudiced Petitioner**

Accordingly, because the Court did not treat the Guidelines as mandatory, Mr. McMonagle could not object to the Court's treatments of the Guidelines as such.  Mr. McMonagle, therefore, did not prejudice Petitioner in any capacity with regard to the non-binding character of the Sentencing Guidelines.

Even if the Court were to consider the remaining <u>Strickland</u> prong - the objective reasonableness of counsel's conduct - it is apparent that Mr. McMonagle did not act unreasonably.  Mr. McMonagle emphasized the discretionary nature of the Sentencing Guidelines numerous times throughout the hearing, (Tr. at 3, 5, 8-9), and advocated for judicial discretion and leniency in sentencing.  Petitioner's counsel was neither ineffective nor deficient in his performance.  Petitioner's counsel did not prejudice Petitioner by failing to raise any objection concerning the Court's treatment of the Sentencing Guidelines, and Petitioner's § 2255 motion, on the grounds of ineffective

assistance of counsel, must fail.

### III. CONCLUSION

For the reasons expressed in this Opinion, the Court denies petitioner's motion for § 2255 relief.  The accompanying Order is entered.


**July 27, 2009**                                    **s/ Jerome B. Simandle**
Date                                              JEROME B. SIMANDLE
                                                  U.S. District Judge

15